174 P.3d 1231 (2008)
Jerome C. IVES as Personal Representative of the Estate of G. Jerome Ives, Respondent/Cross-Appellant,
v.
David T. RAMSDEN and Michelle L. Ramsden and the marital community composed thereof, Appellant/Cross-Respondent.
No. 34446-7-II.
Court of Appeals of Washington, Division 2.
January 2, 2008.
*1234 Carl Jerome Carlson, Carlson & Dennett PS, Seattle, WA, for Respondent/Cross-Appellant.
Christopher Martin Constantine, of Counsel Inc PS, Tacoma, WA, for Appellant/Cross-Respondent.
QUINN-BRINTNALL, J.
¶ 1 David Ramsden, a registered securities broker, recommended that 75-year-old G. Jerome Ives buy investments that nearly depleted all of his liquid assets. Ramsden also induced Ives to personally loan Ramsden funds to purchase a home for a very low interest rate and then defaulted. Ives passed away and, on July 1, 1999, the Ives Estate sued Ramsden, alleging: (1) breach of fiduciary duty, (2) breach of the duty of good faith and fair dealing, (3) a violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, (4) securities fraud contrary to RCW 21.20.010, and (5) violation of the suitability rule contrary to RCW 21.20.702. The trial court found that Ramsden violated his fiduciary duties and duties of good faith and fair dealing, committed securities fraud, violated the CPA, and violated the suitability rule. Both parties appeal.
¶ 2 Ramsden appeals, arguing that (1) the parties agreed to resolve any dispute through arbitration and he did not waive the parties' arbitration agreement, (2) the statute of limitations bars this action, (3) the trial court should have allowed him to amend his answer to raise a failure-to-mitigate-damages defense, and (4) he is entitled to attorney fees below and here as the prevailing party. The Ives Estate cross-appeals, arguing that the trial court erred when it found that four limited partnerships did not violate the suitability rule, RCW 21.20.702.[1] As to Ramsden's claims, we hold that because there is no private cause of action under the suitability rule, a trial court may not impose Securities Act remedies for its violation. But we affirm the trial court's decision awarding damages to the Ives Estate for the Texas Keystone Natural Gas Drilling limited partnership and personal loan transactions because other violations support the trial court's damages award and the imposition of Securities Act remedies did not prejudice Ramsden. Also, we affirm the trial court's grant of attorney fees to the Ives Estate and award it further attorney fees on appeal. As to the cross-appeal, we hold that the findings of fact are insufficient to support the trial *1235 court's conclusion that the investments, as evidence of Ramsden's violation of his duty of care and fair dealing toward Ives, were not unsuitable. Thus, we remand to the trial court for proper findings of fact and conclusions of law regarding the suitability of the first four limited partnership investments and reconsideration of the related claims that Ramsden violated his duty of care and fair dealing regarding these investments.

FACTS

Background
¶ 3 The trial court found the following facts. For reasons discussed below, they are undisputed and verities on appeal.
¶ 4 Ramsden is a securities salesperson registered with the National Association of Securities Dealers (NASD) and must comply with the NASD rules of fair practice and with the Securities Act of Washington, chapter 21.20 RCW. He associated with broker-dealer firms as an independent contractor and specialized in marketing limited partnership interests. Ramsden has a law degree but has never practiced law.
¶ 5 Around 1988, Ramsden moved to Sequim and befriended Ives, who was then 75 years old.[2] Ives was retired and his income (from pensions, Social Security, and investments) was about $31,000 per year. As he explained to Ramsden, Ives also owned: (1) a mortgaged mobile home, (2) no real estate, (3) two cars worth about $10,000, and (4) about $105,000 in liquid assets, almost all in mutual funds. Although he was not totally naïve and kept meticulous financial records, Ives was an unsophisticated investor. Ives wanted to invest in order to generate cash flow with conservative investments. Ramsden recommended that Ives purchase several investments.
A. Limited Partnerships and Annuity
¶ 6 Ramsden sold Ives five limited partnerships and an annuity that were speculative and illiquid.[3] Between 1989 and 1993, Ives sold mutual funds to get the cash necessary to purchase the five limited partnership investments for $47,150. Ramsden received an eight percent commission on the partnership sales, considerably higher than the rate brokers typically receive for the sale of stocks, bonds, and mutual funds. In 1992, Ramsden also sold to Ives an American Skandia annuity for $20,000. The annuity was also illiquid, with an annuity maturation date of 1999, when Ives would be 86 years old.
¶ 7 In 1993, the two men executed the last of the five limited partnerships, which included one for Texas Keystone. On the application, Ramsden intentionally misrepresented Ives's annual income, net worth, investment goals, and investment experience in order to induce Texas Keystone to accept Ives's offer even though he was not a qualified investor under the company's criteria. Ives was then 80 years old and the investment nearly depleted his remaining liquid mutual funds.
B. Personal Loans
¶ 8 Ramsden also borrowed money from Ives to finance his own home. In 1990, Ramsden borrowed $40,000 from Ives and $30,000 from another individual. The loan matured in one year and was supposedly secured by a deed of trust on Ramsden's home. Ramsden withdrew the money from Ives's mutual funds. In lieu of interest, Ramsden promised to replace the mutual funds and any interest that Ives would have received had he kept the money invested in mutual funds. Ramsden did not repay Ives at the year's end nor did he execute a deed of trust.
¶ 9 Instead of repaying Ives, Ramsden executed a 1991 promissory note. In this note, he added $2,000 to the principal already owed. That "payment" equaled a five percent annual interest rate on the $40,000 loan, substantially lower than the market rate for similar mortgages. In addition, in the 1991 note, Ramsden borrowed $30,000 from Ives to pay off the other individual who had financed *1236 Ramsden's home. At this point, over 90 percent of Ives's assets were illiquid. The 1991 promissory note totaled a $72,000 debt on a four-year term. The note was again supposedly secured by a deed of trust to Ramsden's home.
¶ 10 Four years passed and Ramsden still had not paid the debt. Instead, he rolled the debt over into a 1995 promissory note totaling $86,900, including unpaid interest from the previous note. The 1995 note contained the following terms: (1) 8 percent interest (where the market rate was between 12 and 14 percent), (2) a maturity date of 2006 (when Ives would be 93 years old), (3) no acceleration clause, and (4) recited consideration of the deed of trust executed on the 1990 note. Ramsden never provided or recorded a deed of trust. He presented the loan offers as investment opportunities.
C. Ives's Death and the Ives Estate's Actions
¶ 11 Ives died in 1996. Ives's son was appointed personal representative of Ives's Estate on July 9, 1996. When Ives's son learned of the questionable investments, he sold many at a substantial loss, reasonably concluding that the sales would most benefit the Ives Estate.
¶ 12 Ives's son also filed a complaint with the Department of Financial Institution's Securities Division (DFI), which administers the Securities Act. RCW 21.20.450(1). In a consent order, DFI found that Ramsden had engaged in dishonest and unethical practices because he recommended unsuitable investments and borrowed money from Ives. Ramsden neither admitted nor denied the findings of fact or conclusions of law in the consent order.[4]
Procedure
¶ 13 On July 1, 1999, the Ives Estate sued Ramsden, alleging: (1) breach of fiduciary duty, (2) breach of the duty of good faith and fair dealing, (3) a violation of the CPA, (4) securities fraud contrary to RCW 21.20.010, and (5) violation of the suitability rule contrary to RCW 21.20.702.[5]
¶ 14 Ramsden represented himself. For three and a half years, he engaged fully in discovery. But on the eve of trial, he moved to dismiss on the grounds that the parties had an arbitration agreement that he now wished to enforce and that the statute of limitations had run. The trial court held that Ramsden waived his right to enforce the arbitration agreement and that the statute of limitations had not run because Ives did not discover the claim before his death and Ives's son brought the claim within three years of his appointment as estate representative. At the trial's close, Ramsden moved to amend his answer to include a failure-to-mitigate-damages defense, but the trial court denied the motion on the ground that the amendment would prejudice the Ives Estate.
*1237 ¶ 15 The trial court concluded that: (1) the first four limited partnership transactions did not violate the suitability rule because Ives had sufficient liquid assets at the time and, thus, Ramsden should incur no liability for recommending them; (2) the Texas Keystone limited partnership was not a suitable investment and Ramsden committed securities fraud, was negligent, and violated the CPA by recommending it and falsifying Ives's application; and (3) the personal loans for Ramsden's home constituted a breach of Ramsden's fiduciary duties, professional duties, and ethical duties, and were unsuitable investments. Accordingly, the trial court awarded the Ives Estate damages and attorney fees and costs.
¶ 16 Ramsden's appeal requires us to address whether (1) Ramsden waived his contractual right to arbitration, (2) the statute of limitations barred this action, and (3) the trial court erred by denying Ramsden's motion to amend his answer to include a failure-to-mitigate-damages defense. And, in the Ives Estate's cross-appeal, whether the trial court properly applied the "suitability rule" for broker-dealers. We also analyze whether attorney fees were proper below or should be awarded on appeal.

ANALYSIS
Scope of Review
¶ 17 Ramsden assigns error, separately,[6] to every one of the trial court's 118 findings of fact and numerous conclusions of law. The vast majority of these assignments of error are not properly before us because Ramsden fails to articulate a valid ground on which to challenge the trial court's findings of fact.
¶ 18 First, Ramsden alleges error with numerous findings[7] on the ground that they were "unnecessary." Necessity of a finding is not an issue that we review, as it is within the trial court's sound discretion to weigh all the admissible evidence before it and enter judgment based on those facts it deems important. See Affordable Cabs, Inc. v. Dep't of Employment Sec., 124 Wash.App. 361, 367, 101 P.3d 440 (2004) (holding that it is the trier of fact's exclusive province to weigh evidence). And even assuming the findings were unnecessary, Ramsden has not shown that the alleged error prejudiced him. See Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wash.2d 188, 196, 668 P.2d 571 (1983) (holding that error without prejudice is not grounds for reversal). Accordingly, we reject these assignments of error.
¶ 19 Second, Ramsden assigns error to every finding and many conclusions on the ground that the trial court lacked personal jurisdiction because Ramsden and Ives entered an enforceable arbitration agreement. We discuss the merits of Ramsden's arbitration argument below. But if a court has jurisdiction, parties cannot deprive the court of it by contract. Wash. Local Lodge No. 104 of Int'l Bhd. of Boilermakers, Iron Ship Builders & Helpers of Am. v. Int'l Bhd. of Boilermakers, 28 Wash.2d 536, 544, 183 P.2d 504 (1947). Thus, an arbitration agreement cannot deprive the trial court of jurisdiction to rule on the issues properly before it, although an agreement may render erroneous the failure to stay the proceedings. See Wash. Local Lodge No. 104, 28 Wash.2d at 544, 189 P.2d 648; see also Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 455-56, 45 P.3d 594 (2002). As we explain later, these assignments of error also lack merit.
¶ 20 Last, Ramsden claims that substantial evidence does not support numerous factual findings because conflicting evidence favored his case theory. We review findings of fact for substantial evidence, which is evidence viewed in the light most favorable to the respondent that would persuade a fair-minded, rational person of the finding's truth. Cent. Puget Sound Reg'l *1238 Transit Auth. v. Miller, 156 Wash.2d 403, 419, 128 P.3d 588 (2006) (quoting State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994)). Essentially, Ramsden asks us to reweigh the evidence and substitute our judgment for that of the trial court. But we do not weigh evidence or render judgments regarding witness credibility; that is the exclusive province of the trier of fact. Affordable Cabs, 124 Wash.App. at 367, 101 P.3d 440. The Ives Estate methodically responds to each claim of insubstantial evidence and cites the evidence supporting each finding. Substantial evidence supports the trial court's factual findings.
¶ 21 Ramsden fails to offer one valid challenge to the factual findings. Accordingly, we accept the findings for purposes of appeal. But we review de novo whether these findings support the trial court's conclusions of law. Ridgeview Properties v. Starbuck, 96 Wash.2d 716, 719, 638 P.2d 1231 (1982).
Arbitration Clause
¶ 22 Ramsden argues that the trial court erred when it held that he waived his right to enforce an arbitration clause and denied his motion to dismiss on this basis. The Ives Estate agrees that the parties entered into an arbitration agreement[8] that was potentially enforceable in this action, but it argues that Ramsden waived arbitration. We agree with the Ives Estate.
¶ 23 It is well established that a party to an arbitration clause may waive its enforcement. Finney v. Farmers Ins. Co., 21 Wash.App. 601, 620, 586 P.2d 519 (1978) (citing Pedersen v. Klinkert, 56 Wash.2d 313, 352 P.2d 1025 (1960)), aff'd on other grounds, 92 Wash.2d 748, 600 P.2d 1272 (1979). Waiver is the "voluntary and intentional relinquishment of a known right." Lake Wash. Sch. Dist. No. 414 v. Mobile Modules N.W., Inc., 28 Wash.App. 59, 61, 621 P.2d 791 (1980). It will not be found "absent conduct inconsistent with any other intention but to forego that right." Shoreline Sch. Dist. No. 412 v. Shoreline Ass'n of Educ. Office Employees, 29 Wash.App. 956, 958, 631 P.2d 996, 639 P.2d 765 (1981), review denied, 97 Wash.2d 1009 (1982).
¶ 24 Ramsden refers to the contract provision as both an arbitration clause and a forum selection clause. A forum selection clause is an agreement that an action will take place in a particular court (i.e., venue) or jurisdiction. The provisions at issue here govern only arbitration, not venue or jurisdiction, and are, therefore, not forum selection clauses. Accordingly, case law that Ramsden cites regarding forum selection does not guide our decision here.
¶ 25 Ramsden's primary argument is that he did not waive arbitration because he invoked it in his answer. He points to a clause in his answer reading: "Plaintiff's claims are barred by the doctrine[ ] of waiver." Clerk's Papers (CP) at 716. Ramsden argues that the answer mimicked the word "waiver" used in the contract, exhibit 25: "The parties are waiving their right to seek remedies in court, including the right to a jury trial." And he asserts that this clause was sufficient to put the trial court and the Ives Estate on notice that he was party to the arbitration clause and intended to enforce it. We disagree. Ramsden's answer does not use the term "arbitration," does not mention any contract, and does not hint that judicial remedies are totally foreclosed. And "waiver" is an "an imprecise and generic term." Bryan A. Garner, A Dictionary of Modern Legal Usage, at 923 (2d ed.1995). The trial court did not err in ruling that Ramsden's answer did not adequately raise the arbitration issue.
¶ 26 Moreover, Ramsden waived his right to arbitration. The Ives Estate filed the complaint against Ramsden on July 1, 1999. Ramsden answered the complaint, engaged in extensive discovery, deposed witnesses, submitted and answered interrogatories, and prepared fully for trial. Through all of this, Ramsden did not propose a court order to stay the action to allow the parties to arbitrate. Three years and four months *1239 elapsed. Then, on the eve of trial, Ramsden argued for the first time that the arbitration agreement foreclosed trial. In short, Ramsden's conduct was "inconsistent with any other intention but to forego" his right to arbitration. Shoreline Sch. Dist. No. 412, 29 Wash.App. at 958, 631 P.2d 996. Accordingly, we agree with the trial court's ruling that Ramsden waived his right to arbitration.
Statute of Limitations
¶ 27 Next, Ramsden asserts that the statute of limitations bars this action. The Ives Estate responds that the three-year statute of limitations for fraud and securities violations had not accrued before Ives's son was appointed personal representative for the Ives Estate. The Ives Estate argues that it brought those claims shortly before the statute of limitations ran. We agree with the Ives Estate.
¶ 28 The Ives Estate brought these claims under Washington's general survival statute.[9] The Washington survival statute contains no express statute of limitation nor does it indicate the time at which a cause of action "accrues," i.e., when the statute of limitations begins to run. White v. Johns-Manville Corp., 103 Wash.2d 344, 358-59, 693 P.2d 687 (1985) (citing RCW 4.20.046). Thus, the only prerequisite to maintaining a survival action is that the decedent could have maintained the action had he lived. Moen v. Hanson, 85 Wash.2d 597, 599, 537 P.2d 266 (1975).
¶ 29 Here, the Ives Estate's claims of fraud and securities violations had a statute of limitation of three years after the cause of action accrued. RCW 21.20.430(4)(b); RCW 4.16.005, .080(4). Under the discovery rule, the statute of limitation for these actions begins only when the aggrieved party discovers, or should have discovered by due diligence, the fact of fraud or securities fraud and sustains some actual damage as a result. RCW 21.20.430(4)(b); First Md. Leasecorp. v. Rothstein, 72 Wash. App. 278, 281-82, 864 P.2d 17 (1993) (citing RCW 4.16.080(4)).
¶ 30 Ramsden's sole factual argument is that, in June 1996, Ives's son and daughter-in-law were "aghast" when they learned that Ives had invested in limited partnerships with Ramsden. Br. of Appellant at 47. But the trial court rejected this factual contention, finding that Ramsden offered no substantial evidence to support his theory that Ives or the Ives Estate's representative discovered the violations more than three years before he commenced the action in July 1999. This is a credibility determination not subject to our review. Affordable Cabs, 124 Wash.App. at 367, 101 P.3d 440. Further, Ramsden presented no evidence that Ives's relatives discovered they had a cause of action. To discover a cause of action, Ives's son and daughter-in-law had to learn that the investments were not only unsuitable, but also that they had damaged the Ives Estate. Undisputed trial evidence revealed that Ives's son did not investigate his father's investments until after he was appointed personal representative of the estate and, accordingly, could not have known whether the investments had actually damaged the estate until he completed his investigation.
¶ 31 And Ives's son and his daughter-in-law were not "the aggrieved party" to these actions in July 1996, and, thus, their knowledge, if any, could not trigger accrual under the discovery rule. RCW 4.16.080(4); also see RCW 21.20.430(4)(b) (indicating that accrual occurs in a securities claim when the plaintiff discovered, or reasonably should have discovered, the violation). The trial court properly limited the scope of its inquiry to whether and when Ives or the Ives Estate's representative knew or reasonably should have known all material elements of these causes of action.
¶ 32 Ives's son brought this action less than three years after he was appointed personal representative to the estate. Even assuming that Ives's son knew of the Ives *1240 Estate's cause of action on the day that he was appointed personal representative and that knowledge is imputed to the Ives Estate, three years had not elapsed before the Ives Estate brought the action. Accordingly, the statute of limitations had not run on these claims of fraud and securities fraud. And Ramsden's factual argument does not affect the CPA and written contract claims, which had four- and six-year statutes of limitations, respectively. RCW 4.16.040(1); RCW 19.86.120. The statute of limitations does not bar the Ives Estate's action.
¶ 33 Ramsden further argues that the trial court incorrectly required him to prove that the statute of limitations had run. But this ruling is correct. The statute of limitations is an affirmative defense, and the burden is on the party asserting it, here Ramsden, to prove the facts that establish it. Rivas v. Eastside Radiology Assocs., 134 Wash.App. 921, 925, 143 P.3d 330 (2006) (citing Haslund v. City of Seattle, 86 Wash.2d 607, 620-21, 547 P.2d 1221 (1976)), review granted, 161 Wash.2d 1007, 166 P.3d 1217 (2007).
Answer's Amendment
¶ 34 Ramsden also argues that the trial court erred when it denied his motion to amend his answer to add the failure-to-mitigate-damages defense.
¶ 35 We review a trial court's denial of a motion to amend a pleading for manifest abuse of discretion. Del Guzzi Constr. Co. v. Global Nw. Ltd., 105 Wash.2d 878, 888, 719 P.2d 120 (1986). Under CR 15(a), a party may amend once as a matter of course at any time before the adverse party serves a responsive pleading by leave of court or by written consent of the adverse party. CR 15 facilitates the amendment of pleadings, unless amendment would prejudice the opposing party. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 100 Wash.2d 343, 349, 670 P.2d 240 (1983) (citing Fed.R.Civ.P. 15; United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960)).
¶ 36 Here, Ramsden moved to amend his answer after the trial concluded. He sought to add five issues, including the failure-to-mitigate-damages defense. Ramsden argued that the Ives Estate raised and, thus, consented to try the five issues. Regarding the failure to mitigate damages, Ramsden insisted that the Ives Estate should have tried harder to implore Ramsden to record a deed of trust that the parties' 1995 promissory note required. Ramsden pointed to testimony regarding the omitted deed of trust and asserted that the Estate had thus litigated the mitigation issue. The trial court noted that this testimony was inadmissible under the dead man statute and hinted that failure to mitigate was a meritless defense. And the trial court held that Ramsden did not have a good reason to omit this issue in the answer and that, if he had raised the issue earlier, the Ives Estate could have responded with evidence to rebut it.
¶ 37 Essentially, the trial court found that the tardy amendment would unfairly prejudice the Ives Estate. The record reveals that the Ives Estate did not present evidence or a case theory to rebut a claim that Ives failed to mitigate damages. Thus, allowing Ramsden to amend his answer following trial to assert this defense would unfairly prejudice the Ives Estate. A trial court should generally deny a motion to amend a pleading if the amendment would prejudice the opposing party. Accordingly, the trial court properly rejected Ramsden's motion to amend his answer. Caruso, 100 Wash.2d at 349, 670 P.2d 240.
Suitability Rule
¶ 38 On cross-appeal, the Ives Estate challenges conclusion of law 3, in which the trial court found that the first four limited partnerships Ramsden sold to Ives did not violate the suitability rule and, thus, found that Ramsden was not liable for claims arising from those sales. Because the evidence is not sufficient to support the trial court's finding that the first four limited partnerships did not violate the suitability rule, we remand for reconsideration.
¶ 39 Registered securities dealers, such as Ramsden, must comply with the suitability *1241 rule. This rule is embodied in the NASD Rules of Fair Practice. Jablon v. Dean Witter & Co., 614 F.2d 677, 678 nn. 1 & 2, 681 (9th Cir.1980) (citing NASD Manual, art. III, § 2, ¶ 2152(CCH)). The suitability rule is part of the Securities Act:
(1) In recommending to a customer the purchase, sale, or exchange of a security, a broker-dealer, salesperson, investment adviser, or investment adviser representative must have reasonable grounds for believing that the recommendation is suitable for the customer upon the basis of the facts, if any, disclosed by the customer as to his or her other security holdings and as to his or her financial situation and needs.
(2) Before the execution of a transaction recommended to a noninstitutional customer . . . a broker-dealer, salesperson, investment adviser, or investment adviser representative shall make reasonable efforts to obtain information concerning:
(a) The customer's financial status;
(b) The customer's tax status;
(c) The customer's investment objectives; and
(d) Such other information used or considered to be reasonable by the broker-dealer, salesperson, investment adviser, or investment adviser representative in making recommendations to the customer.
RCW 21.20.702.
A. No Private Right of Action Under RCW 21.20.702
¶ 40 The Ives Estate's cross-appeal highlights a larger problem than whether Ramsden's limited partnership recommendations were suitable investments for Ives. We must address whether the rule provides a cause of action for recommending unsuitable investments. We agree with Ramsden that, under the Securities Act, there is no private right of action for violations of the suitability rule.
¶ 41 The parties did not expressly identify this issue, but we may consider issues not raised below "`when the question raised affects the right to maintain the action.'" Bennett v. Hardy, 113 Wash.2d 912, 918, 784 P.2d 1258 (1990) (quoting Maynard Inv. Co. v. McCann, 77 Wash.2d 616, 621, 465 P.2d 657 (1970)). This case presents the foundational question of whether the trial court was authorized to impose liability for breach of the suitability rule, and so we address it.
¶ 42 The Ives Estate asserted in its complaint that Ramsden violated the suitability rule, citing RCW 21.20.702. The trial court held that (1) in recommending the Texas Keystone partnership, "Mr. Ramsden breached his duty of due care, duty of fair dealing, and duty to have reasonable grounds to believe his recommendations were suitable for Mr. Ives" (CP at 69); (2) regarding the personal loans, "Mr. Ramsden breached his duty to have reasonable grounds to believe his recommendations were suitable for Mr. Ives" (CP at 70); and (3) the personal loans "constituted the recommendation and sale of unsuitable investments to Mr. Ives." CP at 70. Through these conclusions of law, the trial court indicated that it held Ramsden liable for breaching the suitability rule embodied in RCW 21.20.702.
¶ 43 The Ives Estate argues that RCW 21.20.702 "probably does create a private cause of action." Reply Br. of Resp't at 12. When a statute creates a right but contains no remedy, the statute may contain an implied private right of action, i.e., the right of a private party to sue under the statute. But in determining whether a statute contains an implied private right of action, we must consider whether: (1) the plaintiff is within the class for whose benefit the statute was enacted, (2) legislative intent, explicitly or implicitly, supports creating or denying a remedy, and (3) implying a remedy is consistent with the underlying purpose of the statute. Bennett, 113 Wash.2d at 920-21, 784 P.2d 1258. Applying those principles here, we hold that RCW 21.20.702 does not create a private right of action because our legislature clearly expressed its intent to disallow civil suits under this provision.
¶ 44 Before our legislature codified the suitability rule in statute, our courts followed federal law and held that a private party may not sue a broker for violating the NASD suitability rule. Sherry v. Diercks, 29 Wash. App. 433, 441, 628 P.2d 1336, review denied, *1242 96 Wash.2d 1003 (1981); and see, e.g., Jablon, 614 F.2d at 678 nn. 1 & 2, 681 (holding that there is no private right of action under the NASD suitability rule). Instead, an aggrieved investor must assert another cause of action, such as breach of fiduciary duty or securities fraud. See Sherry, 29 Wash.App. at 441, 628 P.2d 1336.
¶ 45 When our legislature codified the suitability rule, which is now embodied in RCW 21.20.702 as part of the Securities Act, it allowed individuals to sue investment brokers who allegedly violated "any provisions of RCW 21.20.010, 21.20.140(1) or (2), or 21.20.180 through 21.20.230." RCW 21.20.430(1). Omitted from this list is the suitability rule: RCW 21.20.702. Also omitted from this list is a violation of RCW 21.20.020, which makes it unlawful for a broker "[t]o engage in any dishonest or unethical practice as the director may define by rule," including the recommendation of unsuitable investments. Former RCW 21.20.020(4) (1998); WAC 460-24A-220. Clearly, our legislature decided that private individuals can sue investment brokers under some provisions of the Securities Act, but cannot sue for violations of the suitability rule. Accordingly, no private cause of action exists for violations of the suitability rule. And the civil penalties listed in RCW 21.20.430 may not be assessed for violations of RCW 21.20.702's suitability rule.
B. The Trial Court's Use of the Suitability Rule
¶ 46 The Ives Estate argues that the trial court merely used phrases such as "breach of the suitability rule" as shorthand and that the trial court may properly analyze compliance with the suitability rule as evidence of whether Ramsden breached his common law duty of reasonable care. We agree.
¶ 47 Here, it was proper for the trial court to consider compliance of the suitability rule as evidence of a duty that Ramsden owed his customers. The trial court found that brokers owe clients a common law duty to recommend only suitable investments that comply with the suitability rule set out in RCW 21.20.702. In its cross-appeal, the Ives Estate does not challenge this finding. See Robel v. Roundup Corp., 148 Wash.2d 35, 42, 59 P.3d 611 (2002). Additionally, courts considering this issue have held that the suitability rule may set brokers' common law duty of care toward clients. See, e.g., Mihara v. Dean Witter & Co., 619 F.2d 814, 823-24 (9th Cir.1980) (holding that NASD rules may set brokers' common law duties of care toward clients); Scott v. Dime Sav. Bank of N.Y., FSB, 886 F.Supp. 1073, 1080-81 (S.D.N.Y. 1995) (upholding negligence liability where broker violated the NASD suitability rule), aff'd, 101 F.3d 107 (2d Cir.1996), cert. denied, 520 U.S. 1122, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997); but see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng, 697 F.Supp. 1224, 1227 (D.C.1988) (holding that a violation of the suitability rule was a factor that the jury could weigh in deciding whether a broker was negligent).
¶ 48 The question remains whether the trial court applied the suitability rule as if it were a private right of action or, conversely, as a common law duty of care owed toward clients. If the trial court applied the suitability rule as a private right of action, it erred, and we must answer whether this misapplication of the law prejudiced Ramsden and requires reversal.
¶ 49 The trial court found a suitability rule violation for the Texas Keystone investment on the ground that the investment was highly speculative and "caused the last of [Ives's] significant liquid assets to become illiquid." CP at 68. But the trial court also found that the Texas Keystone investment recommendation was: (1) a breach of Ramsden's duty of due care and fair dealing, (2) a CPA violation under RCW 19.86.020, and (3) a Securities Act violation contrary to RCW 21.20.010. Specifically, the trial court found that the Texas Keystone investment violated the Securities Act because Ramsden engaged in fraudulent misrepresentation when he made untrue statements of material fact to Ives about the investment. The trial court awarded $15,958 in damages under the Securities Act and the CPA. Because the trial court was authorized to award the $15,958 for Securities Act fraud and misrepresentation, the trial court's discussion of the suitability *1243 rule did not prejudice Ramsden and, therefore, does not require reversal.
¶ 50 The trial court also found that Ramsden "breached his duty" to follow the suitability rule for the three personal loans. CP at 70. It did not find a legitimate Securities Act violation, such as securities fraud, regarding these loans. But based on Ramsden's "breach" of the suitability rule, the trial court held that Ramsden "violated RCW Chapter 21.20" when he obtained the three loans from Ives. CP at 70. As discussed above, to the extent the trial court treated the violation of the suitability rule as a separate cause of action, it erred. Although a securities broker may be liable in common law for breaching the suitability rule, he is not subject to Securities Act penalties for breaching the suitability rule. Thus, we review each of the three personal loans to determine whether this error prejudiced Ramsden since error without prejudice is not grounds for reversal. Brown, 100 Wash.2d at 196, 668 P.2d 571.
¶ 51 The trial court held that the 1990 promissory note: (1) unjustly enriched Ramsden by no less than $1,200, (2) violated the Securities Act and, therefore, carried a penalty of $1,200 under RCW 21.20.430, and (3) violated the CPA, RCW 19.86.020. Although the Securities Act remedy was not authorized by law, the trial court had a valid alternative basis to assess the $1,200 penalty for unjust enrichment. Accordingly, no reversible error occurred.
¶ 52 We note that the trial court found that the 1991 promissory note did not unjustly enrich Ramsden because Ramsden paid a fair interest rate of 12 percent on it and awarded no damages.
¶ 53 The trial court also found that the 1995 promissory note was voidable due to failure of consideration because Ramsden failed to provide the promised deed of trust to secure the loan and the investment unjustly enriched Ramsden. The trial court ordered Ramsden to repay the note immediately with a fair market value interest rate of 12 percent. The trial court did not award Securities Act remedies. In short, although the trial court used imprecise language when it concluded that the investments violated the Securities Act, we agree with the Ives Estate that it did not base its remedies on violations of the suitability rule alone and that no prejudice resulted.
C. Suitability of First Four Limited Partnerships
¶ 54 In its cross-appeal, the Ives Estate argues that the trial court erred when it held that the first four limited partnerships were suitable investments. We review whether the trial court's findings support the conclusion that Ramsden violated his duty of due care and fair dealing by recommending unsuitable investments as defined in RCW 21.20.702.
¶ 55 Conclusion of law 3 provides:
The following limited partnership investments Mr. Ramsden recommended and sold to Mr. Ives were not unsuitable, because Mr. Ives had sufficient liquidity for his circumstances following each of the purchases:

 March 20, 1989 $10,000 Phoenix Leasing Cash Distribution Fund III
 March 31, 1989 $10,000 Southwest Oil & Gas Investment Fund VIII
 July 20, 1990 $10,000 Windsor Park Properties 6
 April 15, 1991 $ 5,000 Southwest Oil & Gas Investment Fund XB

CP at 69. The Ives Estate challenges this conclusion on two grounds: (1) the four recommended investments were unsuitable regardless of the amount of Ives's liquid assets remaining after each purchase, and (2) the facts do not support a finding that Ives had sufficient liquidity for his circumstances.
¶ 56 Before recommending a transaction, the suitability rule requires that the broker-dealer have reasonable grounds for believing, on the basis of the information furnished by the customer, and after reasonable inquiry concerning the customer's investment objectives, financial situation, and needs, that the recommended transaction is not unsuitable for the customer. See, e.g., James B. Chase, Exchange Act Release No. 47476, 79 S.E.C. Docket 2256, 2003 WL *1244 23319660 (Mar. 10, 2003); J. Stephen Stout, Exchange Act Release No. 43410, 73 S.E.C. Docket 1081, 1094, 2000 WL 1469576 (Oct. 4, 2000). Thus, the suitability rule requires "`a broker to make a customer-specific determination of suitability and tailor [his] recommendations to the customer's financial profile and investment objective[s].'" Roger W. Reinsch, J. Bradley Reich, & Nauzer Balsara, Trust Your Broker?: Suitability, Modern Portfolio Theory, and Expert Witnesses, 17 St. Thom. L.Rev. 173, 175 (2004) (quoting Robert N. Rapp, Rethinking Risky Investments for that Little Old Lady: A Realistic Role for Modern Portfolio Theory in Assessing Suitability Obligations of Stockbrokers, 24 Ohio N.U. L.Rev. 189, 190 (1998)); see generally F.J. Kaufman & Co. of Virginia, Exchange Act Release No. 27535, 50 S.E.C. 164, 1989 WL 259961 (Dec. 13, 1989).
¶ 57 But whether financial status or customer objective alone can be dispositive is a novel issue of law in Washington. Securities and Exchange Commission (SEC) disciplinary opinions addressing a broker-dealer's duty to follow the suitability rule, where both financial status and investment objective are relevant, have discussed both factors. This suggests that neither factor is dispositive but, rather, all factors must be considered.[10]See Rafael Pinchas, Exchange Act Release No. 41816, 70 S.E.C. Docket 1108, 1999 WL 680044 (Sep. 1, 1999); F.J. Kaufman & Co., Exchange Act Release No. 27535; Patrick G. Keel, Exchange Act Release No. 31716, 51 S.E.C. 282, 1993 WL 12348 (Jan. 11, 1993). Simply because a customer can afford to put funds towards a risky investment does not give the broker-dealer license to disregard the customer's investment objectives. See Henry James Faragalli, Jr., Exchange Act Release No. 37991, 63 S.E.C. Docket 651, 1996 WL 683707 (Nov. 26, 1996); Keel, Exchange Act Release No. 31716 (holding evidence of wealth is not an indicator of suitability). Therefore, to determine if a broker-dealer has breached his duty of due care and fair dealing by failing to follow the suitability rule, the trial court must consider both the customer's financial status and objectives.
¶ 58 Here, the trial court failed to examine whether the limited partnership investments were appropriate given both Ives's financial status and his investment objectives. Accordingly, the findings are insufficient to support the trial court's conclusion that the investments were not unsuitable and that no breach of duty of due care and fair dealing had occurred.
¶ 59 Furthermore, even if the trial court's conclusion that the limited partnership investments were suitable could be supported solely on the basis of Ives's financial status, the findings of fact are insufficient to support the conclusion of law. See Holland v. Boeing Co., 90 Wash.2d 384, 390, 583 P.2d 621 (1978). Here, there are no findings of fact regarding Ives's financial status other than the blanket statement in conclusion of law 3[11] that he had "sufficient liquidity"[12] after the purchases.[13] Without related findings *1245 of fact, there is no meaningful way for us to review the conclusion and, thus, on remand, the trial court must enter findings of fact related to Ives's financial status following the limited partnership investment purchases. Accordingly, we remand for further review.
Interest and Untimely Issues
¶ 60 Ramsden also argues that the trial court erred when it awarded damages and post-judgment interest.
¶ 61 Ramsden baldly asserts that the judgment interest is erroneous, but he does not inform us of the nature of the alleged errors. He appears to argue that former RCW 4.56.110 (1989) does not grant the trial court authority to award judgment interest for the claims not related to the Securities Act. But former RCW 4.56.110(3) requires that courts award interest on any "judgment" and Ramsden does not, and cannot, claim that the trial court did not enter judgment.
¶ 62 Ramsden also raises additional issues for the first time in his reply brief, alleging unreasonable delay in entry of judgment and a discrepancy between the findings and judgment. But issues and argument raised for the first time in a reply brief are untimely and waived. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Accordingly, we will not address these issues.
Attorney Fees
A. At Trial
¶ 63 Ramsden challenges the trial court's grant of attorney fees to the Ives Estate under the CPA, Securities Act, and the terms of the 1995 promissory note. His sole argument is that the trial court should not have granted attorney fees to the Ives Estate because Ramsden should have prevailed. We review a trial court's award of attorney fees for abuse of discretion. Pham v. City of Seattle, 159 Wash.2d 527, 538, 151 P.3d 976 (2007). A trial court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons. Pham, 159 Wash.2d at 538, 151 P.3d 976.
¶ 64 Under the CPA,[14] the Securities Act, and by agreement between contracting parties, a successful plaintiff is entitled to recover reasonable attorney fees and costs. Former RCW 19.86.090 (1987); RCW 21.20.430(1); RCW 4.84.330. Ramsden proffers no evidence that the trial court abused its discretion, and we affirm the trial court's grant of attorney fees below.
B. On Appeal
¶ 65 Both parties request attorney fees and costs on appeal. Regarding the Texas Keystone investment, we grant attorney fees to the prevailing party under former RCW 19.86.090 because the trial court properly found that Ramsden violated the CPA. In addition, the trial court found that the 1995 promissory note contained an attorney fees provision sufficiently broad to cover the present litigation. Accordingly, we award the Ives Estate attorney fees on the personal loan claims. Lastly, under RCW 4.84.290, *1246 we "shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorney[] fees for the appeal." Because the Ives Estate is the prevailing party on appeal, we award it attorney fees and costs.
¶ 66 Affirmed in part and remanded for further proceedings regarding the first four partnership sales in accordance with this opinion.
We concur: HOUGHTON, C.J., and PENOYAR, J.
NOTES
[1] Between 1989 and 1993, Ramsden sold Ives five limited partnership investments. The trial court found that one of those investments, the Texas Keystone investment, was unsuitable. As to the remaining four investments, the trial court found that they were not unsuitable because Ives had "sufficient liquidity" following each of the transactions. Clerk's Papers (CP) at 69. See the "Suitability of First Four Limited Partnerships" section of this opinion, infra, for an analysis of the trial court's ruling on the first four transactions.
[2] For clarity, we refer to the elder Ives as "Ives" and his son and the estate's representative, Jerome C. Ives, as "Ives's son." Both men go by the same name, but are not Sr. and Jr.
[3] "Illiquid," as used here, means that an investor cannot quickly and easily convert the asset into cash.
[4] A DFI consent order is an agreement between DFI and the parties that settle DFI's allegations of securities law violations. DFI negotiates with the parties as to the terms of the agreement and generally orders the parties to comply with state securities laws. In many consent orders, the parties neither admit nor deny the findings or conclusions DFI alleged. Thus, the parties may state they have not admitted to securities law violations, but they cannot later deny the allegations. Here, because Ramsden neither admitted nor denied the claims against him by the Ives Estate, he is prohibited from denying outright that he sold Ives unsuitable investments.
[5] Washington's suitability rule reads:

(1) In recommending to a customer the purchase, sale, or exchange of a security, a broker-dealer, salesperson, investment adviser, or investment adviser representative must have reasonable grounds for believing that the recommendation is suitable for the customer upon the basis of the facts, if any, disclosed by the customer as to his or her other security holdings and as to his or her financial situation and needs.
(2) Before the execution of a transaction recommended to a noninstitutional customer . . . a broker-dealer, salesperson, investment adviser, or investment adviser representative shall make reasonable efforts to obtain information concerning:
(a) The customer's financial status;
(b) The customer's tax status;
(c) The customer's investment objectives; and
(d) Such other information used or considered to be reasonable by the broker-dealer, salesperson, investment adviser, or investment adviser representative in making recommendations to the customer.
RCW 21.20.702.
[6] But see General Order Of Division II 98-2, "In Re The Matter Of Assignments Of Error" (waiving RAP 10.3(g)'s technical requirement of a separately assigned error to each finding of fact or conclusion of law and allowing instead a single assignment of error to identify more than one challenge).
[7] Specifically, Ramsden assigns error to findings of fact 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 81, 82, 87, and 88 on the grounds that they were "unnecessary." Br. of Appellant at 48-49, 56.
[8] Ramsden repeatedly cites the arbitration clause contained in exhibit 25, but the Ives Estate claims that exhibit 102's arbitration clause is the one relevant in this action. This is a moot point, however, as Ramsden waived arbitration and the two clauses are essentially similar.
[9] That statute reads in relevant part: "All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise." RCW 4.20.046(1).
[10] The lack of new cases that would further develop a standard for unsuitable recommendation liability is because almost all unsuitability claims are heard in arbitration. Renée Barnett, Online Trading and the National Association of Securities Dealers' Suitability Rule: Are Online Investors Adequately Protected?, 49 Am. U.L.Rev. 1089, 1105 n. 73 (2000). "[V]irtually all brokers require customers to sign pre-dispute arbitration agreements prior to opening a brokerage account." See id. at 1104. Generally, arbitration awards do not have precedential value and do not contain instructional analyses of law or facts. See id. at 1105.
[11] We treat a finding of fact mislabeled as a conclusion of law as a finding of fact. Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986). But the findings of fact must be sufficient to support the trial court's conclusions of law. In re Marriage of Greene, 97 Wash.App. 708, 714, 986 P.2d 144 (1999).
[12] Although "sufficient liquidity" is not defined, financial status includes factors surrounding the customer's circumstances, such as marital status, the number and age of dependants, earnings, the amount of savings and life insurance, as well as security holdings and other assets. Securities Exchange Act Release No. 8135, 1967 WL 88157 (July 27, 1967).
[13] The record belies this finding. Although Ives had some liquid assets available following the purchases, the limited partnership investments were patently inappropriate for someone in Ives's circumstance: he was elderly, with a limited fixed income, and virtually no other assets on which to rely  the illiquidity of the limited partnerships left Ives financially paralyzed in the event that he needed immediate access to funds. And the trial court found that Ives's investment objectives were "cash flow  conservative," which is entirely inconsistent with illiquid limited partnership investments. CP at 55.
[14] Under the CPA, if attorney fees are only reasonable for certain claims, the court must segregate the time spent on other theories and claims on the record, even if the other theories and claims are interrelated or overlap, unless the trial court finds that "no reasonable segregation of successful and unsuccessful claims can be made." Hume v. Am. Disposal Co., 124 Wash.2d 656, 673, 880 P.2d 988 (1994), cert. denied, 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995). "The burden of segregating, like the burden of showing reasonableness overall, rests on the one claiming such fees." Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N), 119 Wash.App. 665, 690, 82 P.3d 1199, review denied, 152 Wash.2d 1023, 101 P.3d 107 (2004); Kastanis v. Educ. Employees Credit Union, 122 Wash.2d 483, 501-02, 859 P.2d 26, 865 P.2d 507 (1993).

Here, the trial court specifically found in its oral ruling that the Ives Estate's trial attorney deducted a small portion of the fees related to the limited partnership investments and that the legal issues involved in all of the investments were the same and, accordingly, failing to prevail on four of them did not impact the time and fees necessary to prevail on the fifth.