141 P.3d 652 (2006)
Raymond BANUELOS and Lisa Banuelos, Husband and Wife, Respondents,
v.
TSA WASHINGTON, INC., a Washington Corporation d/b/a Hertz Car Sales; and Universal Underwriters Insurance Company, a foreign corporation, Appellants.
No. 24563-2-III.
Court of Appeals of Washington, Division 3.
August 17, 2006.
*653 Carol J. Cooper, Davies, Pearson PC, Tacoma, WA, for Appellants.
David Burton Trujillo, Law Offices of David B. Trujillo, Yakima, WA, for Respondents.
BROWN, J.
¶ 1 The trial court summarily granted judgment to Raymond and Lisa Banuelos (buyers) against TSA Washington, Inc. d/b/a Hertz Car Sales (Hertz) under RCW 46.70.180(4)(a), Washington's bushing law, for its Yakima dealer's failure to return the buyers' $1,000 down payment check and trade-in within three days. The court awarded $4.27 damages, $12.81 trebled damages under the Consumer Protection Act (CPA), and $90,125 for attorney fees. On appeal, Hertz contends the trial court erred (1) construing the bushing *654 statute, (2) awarding damages, and (3) awarding excessive attorney fees. Because Hertz violated the bushing law and we find no abuse of discretion in awarding damages and fees, we affirm.

FACTS[1]
¶ 2 On Sunday, February 29, 2004, the buyers agreed by written purchase order to buy a van from Hertz. They offered a trade-in, a $1,000 down payment check, and agreed to finance the rest through the dealer. According to sales person, Timothy A. McDonald, Mr. Banuelos said he worked in construction. No Hertz representative then or later signed the purchase order, which was contingent on financing.
¶ 3 On the credit application, Mr. Banuelos listed his employer as "Red Earth Con." Clerk's Papers (CP) at 247. He listed his employment time as "3 months," his gross income as "35000.00" and his work phone number. CP at 247. He left blank the boxes for his monthly income and his department or supervisor. He provided no documentary proof of income.
¶ 4 On March 1, the dealer obtained loan approval for the buyers from a lender subject to income proof, but Harvey Smith, the dealer's finance manager, had none. Mr. Smith relayed this to Mr. McDonald. Mr. McDonald called the work number given in the credit application and reached Mr. Banuelos on Mr. Banuelos' cell phone. Mr. Banuelos told Mr. McDonald he was at work and would bring in the necessary proof of employment at 3:00 p.m. The dealer's general manager, Bill Soneson, then approved deposit of the buyers' check. The check was deposited into Hertz's general checking account, not a trust account, the next day.
¶ 5 Later on March 1, Mr. Smith called Mrs. Banuelos, who told him Mr. Banuelos was unemployed. The parties dispute what was said. According to Ms. Banuelos, Mr. Smith told her to bring the van back because financing was not approved. According to Hertz, Mr. Smith told her if she could not provide proof of employment she would have to bring the van back.
¶ 6 In the evening of March 1, the buyers brought the van back to the dealer. Mr. Smith had left, so they spoke to Shelly Arambul, another finance manager. Even though Ms. Banuelos explained Mr. Banuelos was unemployed and her version of the conversation with Mr. Smith, Ms. Arambul believed financing could still be arranged. Ms. Arambul declined to accept the van and told the buyers to contact Mr. Smith or Mr. Soneson the next day. The buyers left with the van.
¶ 7 On March 2, Mrs. Banuelos called Mr. Sonesen, informing him she was unsatisfied and wanted to return the van.
¶ 8 On March 3, Mr. Sorensen declared he reviewed the circumstances and approved the transaction/cancellation on March 3. Later that day, the buyers returned the van and picked up their trade-in. According to Hertz, Mr. Smith told the buyers Hertz would not return the down payment until their check for the down payment cleared its bank. According to Mrs. Banuelos, Mr. Smith related their check was in a safe that could not be opened at that time, but it would be returned to them the next day.
¶ 9 On March 4, Mr. Soneson requested a refund check from Hertz's corporate office in Pasco. The same day, the buyers obtained counsel who immediately demanded $1,000 plus $150 legal fees. The refund check arrived on March 5 and was, from Hertz's point of view, available to the buyers during negotiations. Hertz finally mailed the check to the Banueloses on March 16, annotated: "Refund of Down Payment on Unwind  Customer to Provide Proof That Check Cleared Bank." CP at 373. The buyers did not negotiate the check until September 2004.
¶ 10 Initially, the buyers sued in district court. The parties agreed the jurisdiction was inapt and they stipulated to dismissal without prejudice. The same day the buyers sued in superior court for damages, treble damages, and permanent injunctive relief, alleging Hertz violated the bushing statute and *655 the CPA. The court granted summary judgment to the buyers, concluding Hertz violated both the bushing statute and the CPA. The trial court defined the bushing statute's "tender" term as meaning "an unconditional offer immediately capable of fulfillment within the statutory deadline set forth in RCW 46.70.180(4)[ (a)(ii) ]." CP at 292. The court's judgment included $4.27 for lost use of funds; $12.81 in treble damages; and $90,125 in attorney fees.[2]
¶ 11 Hertz unsuccessfully requested reconsideration. Hertz appealed.

ANALYSIS

A. Summary Judgment
¶ 12 The issue is whether the trial court erred in granting the buyers' request for summary judgment, concluding Hertz violated RCW 46.70.180(4)(a), the bushing statute. Hertz contends the trial court (1) misconstrued the statutory meaning of "tender" and "within three calendar days," (2) improperly considered the effect of Hertz's behavior in depositing the down payment and allowing contract unwinding, and (3) erred in not considering Mr. Banuelos' employment misrepresentations.
¶ 13 We review summary judgment rulings de novo, engaging in the same inquiry as the trial court. Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wash.2d 168, 177, 125 P.3d 119 (2005). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (citing CR 56(c)). All facts and reasonable inferences are construed most favorably to the nonmoving party. Id. "Summary judgment should be granted if reasonable persons could reach but one conclusion from the evidence presented." Id.
¶ 14 First, Hertz insists it properly tendered the buyers' down payment within three days. RCW 46.70.180(4)(a) proscribes Hertz from committing, allowing or ratifying the "bushing," meaning:
Taking from a prospective buyer or lessee of a vehicle a written order or offer to purchase or lease, or a contract document signed by the buyer or lessee, which:
(a) Is subject to the dealer's, or his or her authorized representative's future acceptance, and the dealer fails or refuses within three calendar days, exclusive of Saturday, Sunday, or legal holiday, and prior to any further negotiations with said buyer or lessee, either (i) to deliver to the buyer or lessee the dealer's signed acceptance, or (ii) to void the order, offer, or contract document and tender the return of any initial payment or security made or given by the buyer or lessee, including but not limited to money, check, promissory note, vehicle keys, a trade-in, or certificate of title to a trade-in.
RCW 46.70.180(4)(a). Generally, "bushing" occurs when a car dealer obligates a buyer to buy, but leaves the dealer room to change the terms of the deal for more than three days. Plouse v. Bud Clary of Yakima, Inc., 128 Wash.App. 644, 645, 116 P.3d 1039 (2005), review denied, 157 Wash.2d 1015, 139 P.3d 350 (2006). In Plouse, the dealer failed to provide financing within three days after both the buyers signed the purchase agreement. This court held the bushing statute did not apply because the dealer's acceptance was unconditional with the dealer signing the purchase agreement. Id. at 649, 116 P.3d 1039.
¶ 15 Unlike in Plouse, Hertz did not sign the vehicle purchase order at any time, let alone within three days, and did not comply with the explicit voiding provisions of RCW 46.70.180(4)(a) within three days. Plainly, under RCW 46.70.180(4)(a), Hertz was required within three days to either unconditionally deliver its signed acceptance or unconditionally void the offer and "tender the return of any initial payment or security made or given by the buyer." RCW 46.70.180(4)(a) lists inclusively and unambiguously exact items to be unconditionally offered for return and pick up by the buyer *656 within three days if the dealer voids the purchase offer, "money, check, promissory note, vehicle keys, a trade-in, or certificate of title to a trade-in." The inclusive list refers to "any initial payment or security made or given by the buyer."
¶ 16 Given our analysis, we conclude RCW 46.70.180(4)(a) is self-defining and not ambiguous. The trial court needlessly defined "tender." However, because the trial court consistently and correctly applied RCW 46.70.180(4)(a), it did not err. Hertz was required within three days to unconditionally offer to return or actually return "any initial payment or security made or given by the buyer." RCW 46.70.180(4)(a). Because "money" and "check" and "trade-in" are separately listed as payment or security items to be returned, we reject Hertz's argument that it could deposit the buyers' check and substitute another conditional check in its place. The facts here amply illustrate the shortcomings and pitfalls of such conduct.
¶ 17 While Hertz argues it is reasonable to wait for the buyers' check to clear, it could have avoided its self-imposed quandary by following RCW 46.70.180(4)(a) and holding the check, like the trade-in, for return to the Banueloses. Further, to allow new conditions on acceptance or avoidance would constitute negotiations precluded by RCW 46.70.180(4)(a). The buyers signed a purchase offer on February 29, a Sunday. Hertz had three calendar days, or until March 3, to act in compliance with RCW 46.70.180(4)(a), but it failed to do so.
¶ 18 Hertz next argues the court erred in not taking into consideration its intention to unwind the deal at Ms. Banuelos' request, considering it might have obtained financing despite Mr. Banuelos' employment misrepresentations. Given Hertz's knowledge that Mr. Banuelos was unemployed, its speculation about overcoming the financing hurdle, and its argumentative statement of good faith, we find no strength in this argument.
¶ 19 Similarly, we reject Hertz's last argument that the court erred in not considering Mr. Banuelos' employment misrepresentations in light of its affirmative defenses of estoppel and unclean hands. Contrary to Hertz's argument, the court considered Mr. Banuelos' misrepresentation, but it reasoned even if true the fact was immaterial to whether Hertz violated the bushing statute. We agree, even if true, Hertz's remedy was to void the purchase agreement as prescribed in RCW 46.70.180(4)(a).

B. Damages
¶ 20 The issue is whether the trial court erred in awarding $4.27 in damages for lost use of funds plus $12.81 in treble damages under the CPA. Hertz contends the buyers' loss of use of the check funds should run from March 5, not March 16 as determined by the trial court. Further, Hertz contends the court erred in trebling the nominal damages. The buyers contend Hertz waived or conceded damages. We disagree. Hertz consistently opposed both liability and damages even though the buyers gave up their September damage cut-off claim to facilitate judgment entry.
¶ 21 We review a trial court's award of damages for abuse of discretion. Krivanek v. Fibreboard Corp., 72 Wash.App. 632, 636, 865 P.2d 527 (1993). Abuse of discretion occurs when the court's exercise of discretion is "`manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 778, 819 P.2d 370 (1991) (quoting State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)). We will reverse a damages amount only if it is outside the range of relevant evidence, shocks the conscience, or results from passion or prejudice. Mason v. Mortgage Am., Inc., 114 Wash.2d 842, 850, 792 P.2d 142 (1990). The trial court's findings of fact are superfluous for summary judgment; we disregard them except for legal reasoning and conclusions. Duckworth v. City of Bonney Lake, 91 Wash.2d 19, 21-22, 586 P.2d 860 (1978).
¶ 22 Here, the dealer told the buyers the new check was available on March 5, but negotiation was conditional, causing delay. Further delays followed while the parties unsuccessfully negotiated settlement. On March 12 Hertz mailed the new check to the buyers' home where it was received on *657 March 16. The buyers gave up further damages claims to facilitate judgment entry. The principle is the same whether two days or 13 days is involved. Even Hertz, in its trebling argument, points out the damages are nominal. Nominal interest damages for a period of days are trifling, de minimis, and generally merit little or no analysis if the right is first established. Sorrel v. Eagle Healthcare, Inc., 110 Wash.App. 290, 296, 38 P.3d 1024 (2002).
¶ 23 Under RCW 46.70.180(4)(a) the original down payment check should have been returned on March 3 to avoid bushing. The replacement check was not returned until March 16, a difference of 13 days. Under RCW 19.52.010, the court was required to apply 12 percent interest per annum because no other rate was agreed upon by the parties. Using the 12 percent annual rate on 13 days loss of use of the $1,000, the court arrived at $4.27 in damages. This nominal amount is within the range of relevant evidence, is not shocking, and is not the result of passion or prejudice. The trial court did not err in deciding a March 16 receipt date and granting 13 days of interest.
¶ 24 Regarding treble damages, under RCW 46.70.310, any violation of chapter 46.70 RCW is deemed to affect the public interest and constitutes a violation of the CPA. The CPA permits the court, in its discretion, to increase the damage award to an amount not to exceed three times the actual damages sustained, up to a maximum award of $10,000. RCW 19.86.090. While the interest loss is, as pointed out by Hertz, nominal, the court did not abuse its discretion in awarding $12.81 in treble damages.

C. Attorney Fees
¶ 25 The issue is whether the trial court erred in awarding and calculating attorney fees. Hertz contends $90,125 is unreasonable and excessive because the court improperly calculated counsel's hours and wrongly applied a 1.5 multiplier.
¶ 26 We review a trial court's award of attorney fees for an abuse of discretion. Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wash.2d 396, 410, 759 P.2d 418 (1988). In determining reasonable attorney fees, the trial court must first calculate the "lodestar" figure. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 597, 675 P.2d 193 (1983). This figure represents the number of hours reasonably expended (discounting hours spent on unsuccessful claims, duplicated effort, and otherwise unproductive time) multiplied by the attorney's reasonable hourly rate. Id. In determining the attorney's reasonable hourly rate, the trial court may consider the skill level the litigation requires, the time limitations the litigation imposes, the size of the potential recovery, the attorney's reputation, and the undesirability of the case. Id.
¶ 27 After calculating the lodestar fee, the court may adjust the fee to reflect factors not already considered in reaching the lodestar amount, including the contingent nature of success and the quality of the work performed. Id. at 598, 675 P.2d 193. The court should consider the contingent nature of success as of the outset of the litigation but should not apply the risk factor to hours expended after recovery is assured. Id. at 598-99, 675 P.2d 193. The quality of the work supports an adjustment to the lodestar figure only when the representation is unusually good or bad, considering the skill level normally expected of an attorney with the hourly rate used to compute the lodestar. Id. at 599, 675 P.2d 193.
¶ 28 Generally, the trial court is required to enter findings of fact and conclusions of law supporting its award of attorney fees because without such the reviewing court is unable to determine whether the exercise of the trial court's discretion was manifestly unreasonable or based upon untenable grounds. Brand v. Dep't of Labor & Indus., 139 Wash.2d 659, 674, 989 P.2d 1111 (1999). While the court here did not enter formal written findings and conclusions, it filed a letter opinion showing in detail its lodestar calculation and its basis for implementing the multiplier, permitting review.
¶ 29 Here, the buyers' counsel submitted detailed billing records. He requested compensation at an hourly rate of $175 per hour for 302.65 hours pre-summary judgment and *658 146.02 hours post-summary judgment, for a total of 448.67 hours.
¶ 30 After reviewing the billing records, the court found 385 total hours were reasonably necessary. The court reduced the amount based on irrelevant discovery requests, "counsel's verbiage in drafting motions, orders and other pleadings is excessive," and counsel did not have to "re-invent the wheel in commencing the litigation" because pleadings were used from district court. CP at 14.
¶ 31 The court also found $175 per hour was reasonable based on counsel's experience in this area of law. The court noted counsel was "one of the few attorneys in this geographical area to practice in a novel specialty area for under-served, vulnerable people on matters of important public interest work." CP at 15.
¶ 32 Based on this record, the court's findings are supported by substantial evidence. Contrary to Hertz's contention, the court considered the district court litigation and reduced counsel's hours accordingly. The court did not abuse its discretion in its lodestar calculation.
¶ 33 Courts may adjust the lodestar amount to compensate attorneys for the risk "`the litigation would be unsuccessful and that no fee would be obtained.'" Bowers, 100 Wash.2d at 598-99, 675 P.2d 193 (quoting Copeland v. Marshall, 641 F.2d 880, 893 (D.C.Cir.1980)). Adjusting the lodestar is within the trial court's discretion. Bowers, 100 Wash.2d at 598, 675 P.2d 193.
¶ 34 Here, the court imposed a 1.5 multiplier on the pre-summary judgment award of attorney fees based on the risk of litigation, the contingent nature of the success, the quality of work, and the lack of legal authority prior to Plouse v. Bud Clary of Yakima, Inc., 128 Wash.App. 644, 645, 116 P.3d 1039 (2005), review denied, 157 Wash.2d 1015, 139 P.3d 350 (2006). These reasons provide a tenable basis for the trial court's award. "`We will not overturn a large attorney fee award in civil litigation merely because the amount at stake in the case is small.'" Brand, 139 Wash.2d at 666, 989 P.2d 1111 (quoting Mahler v. Szucs, 135 Wash.2d 398, 433, 957 P.2d 632 (1998)).
¶ 35 The buyers request attorney fees on appeal under RCW 46.70.190 (actual damages caused by vehicle dealer unfair practices) and/or RCW 19.86.090 (the CPA). Since the buyers have prevailed on appeal, we grant their request for fees in an amount to be determined by a commissioner of this court.
¶ 36 Affirmed.
WE CONCUR: SCHULTHEIS, A.C.J., and KULIK, J.
NOTES
[1] We deny the buyers' hearsay objections to the Hertz opening brief. Hertz cites to the record for its factual assertions. We consider the facts under the summary judgment standard for review as explained below.
[2] Following the judgment, the State of Washington intervened. The State and Hertz entered into a stipulated order for injunctive relief where Hertz agreed to discontinue any practices that violate the bushing statute and to pay $5,000 in legal fees incurred by the attorney general's office.